JURY DEMAND

## IN THE UNITED STATES DISTRICT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **DENNIS CAIL,** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| v. § | CA NO. _____ | |
| § | | |
| **RSM US LLP f/k/a** § | | |
| **McGLADREY, LLP** § | | |
| § | | |
| § | | |
| **Defendant.** § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

COMES NOW, DENNIS CAIL (hereinafter "Plaintiff,") and files this Original Complaint (hereinafter this "Complaint"), complaining of RSM US LLP f/k/a McGladrey, LLP (hereinafter "Defendant") and in support thereof respectfully shows the Court as follows:

## I.
## THE PARTIES

1. Plaintiff is an individual who is a citizen of the State of Texas and resides in Dallas, Dallas County, Texas.

2. Defendant is an Iowa limited liability partnership with its principal place of business in Chicago, Illinois.

## II.
## JURISDICTION

3. The Court has jurisdiction pursuant to 28 U.S.C. §1331 as the claims arise under Title VII of the Civil Rights Act of 1964 ("Title VII") and as amended (42 U.S.C. §2000e *et seq.*), the American Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.* and the Family Medical Leave Act ("FMLA") and supplemental jurisdiction over the state law claims under 28 U.S.C. 1367.

## III.
## VENUE

4.   Venue of this action is governed by 28 U.S.C. §1391 and is proper in the Northern District of Texas because Cail was employed by the Defendant in Dallas County, Texas and the incidents giving rise to this lawsuit occurred in Dallas County, Texas.

## IV.
## SERVICE

5.   Defendant may be served by serving the Complaint and citation upon its Registered Agent, Corporation Service Company dba CSC - Lawyers Incorporating Service Company located at 211 E. 7th Street, Suite 620, Austin 78701.

## V.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.   Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC"). The EEOC Notice of Right to Sue was mailed on January 29, 2018 and the TWC Notice of Complainant's Right to File Civil Action was mailed on February 8, 2018.

7.   Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit and his lawful recovery herein.

## VI.
## FACTUAL BACKGROUND

8.   Cail's employment at RSM began on April 2, 2015.  Cail was interviewed by a number of individuals including Greg Maddux ("Maddux"), his direct supervisor. Cail learned that he had been strongly endorsed for hire by Jim Lamb and a number of other managers who were substantially higher in the company than Maddux.  Cail also learned that Maddux had certain reservations about hiring him. At the present time, all of the actions Cail is complaining about were undertaken by Maddux.

9. Cail was qualified for and excelled at his position, but was treated less favorably by Maddux and then terminated, because he was an African-American, because he had a disabling injury and because he took a worker's comp/FMLA leave.

10. RSM's 2016 fiscal year ran from May 1, 2015 through April 30, 2016. During the 2016 fiscal year, Cail's revenue generation far exceeded all of his 33 co-workers, except for one. All of Cail's 33 co-workers were Caucasian. A list of revenue generation for the 2016 fiscal year for Cail and his 33 co-workers shows that Cail had the second-highest revenue generation.

11. In May 2016, just after the end of the 2016 fiscal year, Cail had his annual review with his supervisor, Maddux (who is caucasian). At that review, Maddux unilaterally reduced Cail's fiscal year 2016 sales, sales that had already been confirmed and documented in the CRM system (SalesForce.com), by approximately $900,000. At the same time, Maddux increased Cail's fiscal year 2017 objective from $1.5M to $3.5M (a 133% increase).

12. Maddux expressed no justification for either action. Cail strongly disagreed with Maddux and expressed his disagreement at the time. Of all the similarly situated Caucasians, no one had booked sales decreased or sales objective increased by anything remotely approaching what Maddux did to Cail

13. At no time during Cail's May 2016 annual performance review or follow up e-mails with him did Maddux mention or refer to a need to improve Cail's performance or the possibility of an "employee counseling report" ("ECR").

14. On June 16, 2016, without any prior warning and notwithstanding Cail's exceptional 2016 fiscal year results and Cail's achieving the prior month's newly-imposed, highly-inflated 2017 sales objectives, Cail was presented with an ECR and was notified that he would not receive his expected annual bonus of $62,500.00.

15. Cail did not agree with the ECR as it was a fabrication in all respects. Cail had

met his goals and was performing exceptionally. Cail strongly disagreed with the ECR and expressed his disagreement at the time the ECR was presented to him. Cail was told that he had to sign it to show he had received it. RSM and Maddux did not treat any similarly situated Caucasians this way and Cail knows of no Caucasian co-worker who was similarly given an ECR by Maddux even though his or her performance was far below Cail's performance.

16. Within a month, Cail went from an individual who had performed so well that Cail's supervisor increased Cail's sales objectives by 133% to an individual who Cail's supervisor felt should be put on an ECR.

17. From May 1, 2016 until Cail suffered an on-the-job injury in mid-August 2016 – approximately 3 ½ months – Cail exceeded the new sales objectives that Maddux had imposed and met and exceeded every single requirement imposed by the ECR. Among the ECR deadlines was a deadline to have a certain number of meetings per month and a deadline to achieve certain sales goals/bookings between May and July 2016. Cail not only met those deadlines and goals, he exceeded them.

18. The ECR also stated that follow-up activity would take place and, specifically, that "there will be a formal meeting the last week of July [2016] to assess the plan and metrics realized." Maddux never bothered to have such a meeting. The obvious reason was that Cail had met and exceeded the plan and the metrics.

19. Thereafter, Cail continued his exceptional performance during the first part of August 2016 until he suffered a work injury on August 19, 2016 which resulted in a herniated disc and a bulging disc. Shortly thereafter, Cail disclosed the injury to RSM and provided them with a doctor's certification that he was unable to work. The Company informed Cail that Cail's absence would be a worker's compensation leave of absence and that he would also be using up his FMLA leave at the same time.

20. Immediately after Cail's leave of absence began, he received repeated phone calls and text messages from Maddux asking him to address work-related issues. Maddux was clearly annoyed that Cail was not able to work at that time. Maddux's calls to Cail and his text messages stopped after he was informed by RSM's HR department that he should have no further communications with Cail. Over the course of the next six weeks, and thereafter, Cail was under the care of a doctor and continued to inform RSM about his status, the need to continue his leave of absence and his prognosis for returning to work.

21. On October 6, 2016, <u>while CAIL was still on his workers' compensation/FMLA leave,</u> Cail received a termination notice from RSM by email and subsequently by regular mail. No one bothered to even call Cail. The termination notice contained no explanation for Cail's termination—other than a vague reference to "your performance"—nor did anyone from RSM ever tell Cail why he was terminated other than the vague reference in the termination notice.

22. Maddux was reluctant to hire Cail because he is an African-American, and he only agreed to the hiring because Cail was so strongly endorsed by a number of individuals above him in the Company. Following Cail's hiring, however, Maddux undertook a course of discriminatory action against Cail including unprecedented and unfair adjustments to Cail's actual sales for fiscal year 2016 and to Cail's sales goals for fiscal year 2017 and a baseless, false ECR, all for the purpose of trying to get Cail to quit. When it became clear Cail was not going to quit, Maddux terminated him during a leave of absence for reasons that were absolutely false and not justifiable in any way.

23. Maddux's decision to fire Cail was also motivated by the fact that he had suffered a work injury that resulted in his having to take a leave of absence and left him with a disabling condition which Maddux unlawfully and incorrectly concluded would negatively impact Cail's ability to do his job. The fact that Maddux constantly attempted to contact Cail to assist him with

work issues during the first part of Cail's leave of absence suggests very clearly that Maddux was upset that Cail was absent from work and that Maddux assumed, incorrectly, that Cail might not be able in the future to meet the travel and other demands of the job.

## VII.
## COUNT ONE
## DISABILITY DISCRIMINATION IN VIOLATION OF THE
## TEXAS COMMISSION ON HUMAN RIGHTS ACT AND
## AMERICANS WITH DISABILITIES ACT

24. Plaintiff pleads a cause of action against Defendant for disability discrimination in violation of the Texas Commission on Human Rights Act. Tex. Labor Code § 21.051 ("TCHRA") and the Americans with Disabilities Act ("ADA"). The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein. Plaintiff further shows as follows:

25. Defendant fired Plaintiff and otherwise discriminated against Plaintiff because of an actual or perceived disability in violation of the TCHRA and ADA.

26. Plaintiff has met all procedural prerequisites of bringing this discrimination claim. Plaintiff timely filed TCHRA/EEOC charges relating to these violations and has received a Right to Sue letter relating to these charges. Further, Plaintiff is within all applicable statutes of limitations for bringing this civil action.

27. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and will continue to suffer damages including, but not limited to, lost wages, front pay, back pay, lost employment benefits, loss of earning capacity, pecuniary losses, injury to reputation and professional standing, emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

28. In addition, Plaintiff is entitled to recover "compensatory" and/or punitive damages from Defendant because the clear and convincing facts of this case demonstrate that Defendant engaged in unlawful discriminatory practices with malice or with reckless indifference to Plaintiff's state- and federally-protected rights. Accordingly, Plaintiff asks that compensatory and exemplary damages be awarded against Defendant in a sum within the jurisdictional limits of this Court.

29. Plaintiff was required to retain attorneys to prosecute this action and has agreed to pay the retained attorneys a reasonable fee. Pursuant to §21.259 of the Texas Labor Code and also applicable federal law, Plaintiff seeks recovery of Plaintiff's reasonable and necessary attorneys' fees and costs.

## VIII.
## COUNT TWO
## RACE DISCRIMINATION AND DISPARATE TREATMENT

30. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes with and incorporated herein with the same force and effect as if set forth verbatim.

31. Plaintiff pleads a cause of action against Defendant under Title VII of the 1964 Civil Rights Act and §21.055 of the Texas Labor Code for race discrimination and disparate treatment in connection with Plaintiff's employment and termination. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and realleged for all purposes, and incorporated herein with the same force and effect as set forth verbatim herein.

32. Plaintiff was subjected to an ECR, fired and otherwise discriminated against by Defendant because of Plaintiff's race. Plaintiff was treated differently by Defendant than similarly situated Caucasian employees. Plaintiff has met all procedural and administrative requirements of bringing this claim.

33. As a direct and proximate result of the acts complained of above, Plaintiff has suffered damages, including back pay, front pay, interest on back pay, and compensatory damages, including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

34. As a result of Defendant's behavior, Plaintiff has been forced to retain legal counsel, and has incurred reasonable attorneys' fees in the prosecution of this matter. Plaintiff is entitled to recover these fees pursuant to §21.259 of the Texas Labor Code and also applicable federal law along with costs of court.

35. Because Defendant acted with malice or with reckless indifference to Plaintiff's rights, Plaintiff is entitled to punitive damages.

## IX.
## COUNT THREE
## HOSTILE WORK ENVIRONMENT AND DISCRIMINATION UNDER
## TITLE VII AND THE TEXAS LABOR CODE AGAINST THE DEFENDANT

36. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes with and incorporated herein with the same force and effect as if set forth verbatim.

37. Cail is a member of a class protected under Title VII and §21.055 of TCHRA based on his race, African-American.

38. Cail will show that the Defendant's aforementioned conduct violates Title VII and Chapter 21 of the Texas Labor Code because it discriminated against Cail and subjected him to a hostile work environment. This harassment affected the terms, conditions, and privileges of Plaintiff's employment.

39. As a direct and proximate result of the acts complained of above, Plaintiff has suffered damages, including back pay, front pay, interest on back pay, and compensatory

damages, including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

40. As a result of Defendant's behavior, Plaintiff has been forced to retain legal counsel, and has incurred reasonable attorneys' fees in the prosecution of this matter. Plaintiff is entitled to recover these fees along with costs of court pursuant to §21.259 of the Texas Labor Code and also applicable federal law.

41. Because Defendant acted with malice or with reckless indifference to Plaintiff's rights, Plaintiff is entitled to punitive damages.

## X.
## COUNT FOUR
## RETALIATORY AND DISCRIMINATORY TERMINATION
## IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA")

42. The allegations contained in all of the preceding paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes with the same force and effect as if set forth verbatim herein.

43. Plaintiff pleads a cause of action against Defendant for interference with, retaliation, and discrimination in violation of the FMLA.

44. Defendant interfered with Plaintiff's FMLA leave during the time he was on leave and fired Plaintiff because he had exercised his rights and requested and taken leave allowed under the FMLA and Defendant's policies.

45. Defendant's actions were willful in violation of the FMLA.

46. As a direct and proximate result of the acts complained of, Plaintiff was prejudiced and has suffered damages and is entitled to recover all damages allowed by law including lost wages (back pay and front pay), lost benefits, compensatory damages, interest and liquidated damages.

47. As a result of Defendant's behavior, Plaintiff has been forced to retain legal counsel, and has incurred reasonable attorneys' fees in the prosecution of this matter. Plaintiff is entitled to recover these fees along with costs of court.

## XI.
## COUNT FIVE
## WORKERS COMPENSATION RETALIATION CLAIM

48. The allegations contained in all of the preceding paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes with the same force and effect as if set forth verbatim herein.

49. Tex. Labor Code 451.001 states that "A person may not discharge or in any other manner discriminate against an employee because the employee has filed a workers' compensation claim in good faith…" Furthermore, merely informing an employer of a compensable injury is sufficient to institute' a compensation proceeding under the statute.

50. Tex. Labor Code 451.002(a) states that "a person who violates Section 451.001 is liable for reasonable damages incurred by the employee as a result of the violation."

51. On or about August 19, 2016, Cail suffered an on the job injury and in good faith advised the Company of his work-related injury. Maddux was not happy and frustrated that Cail was on leave.

52. Within months of him going out on leave for his work-related injury, the Company fired Cail without explanation.

53. Plaintiff's discharge or discrimination would not have happened when it did but for his taking leave for his work related injury.

54. The firing of Plaintiff is in direct violation of Tex. Labor Code 451.001 and Plaintiff was discharged for taking leave and, as a result, Plaintiff has been damaged.

55. Defendant's actions were done with actual malice towards Plaintiff, thereby

entitling Plaintiff to exemplary damages.

56. As the result of Defendant's wrongful conduct, Plaintiff is entitled to recover his reasonable damages including without limitations, lost wages, back pay, front pay, and benefits, damages for mental anguish, prejudgment and post judgment interest, court costs and punitive damages and all other damages, costs and fees recoverable under §451.001.

## XII.
## COUNT SIX
## BREACH OF CONTRACT

57. Plaintiff pleads a cause of action for breach of contract. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes with and incorporated herein with the same force and effect as if set forth verbatim.

58. In violation of the terms of the Defendant's bonus plan, Defendant failed to pay Plaintiff his annual bonus for fiscal year 2016--$62,500.00--which he was owed and had earned. This failure constituted a breach of contract for which Plaintiff seeks damages.

59. As a direct and proximate consequence of Defendant's breach, Plaintiff suffered damages, including without limitation his unpaid compensation in an amount in excess of the minimum jurisdictional requirements of this Court.

60. Because of the above-described breach of contract, Plaintiff had to retain attorneys to prosecute this action and agreed to pay the retained attorneys a reasonable fee. Pursuant to Texas Civil Practice & Remedies Code §§38.000-38.006 et seq., Plaintiff has given or prior to the entry of a judgment, will give Defendant written notice of Plaintiff's claim for attorneys' fees.

61. All conditions precedent to all relief being sought by Plaintiff in this action have been met, performed, occurred and/or been waived.

## XIII.
## DAMAGES FOR MENTAL ANGUISH AND EMOTIONAL DISTRESS

62. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes with and incorporated herein with the same force and effect as if set forth verbatim.

63. As a direct and proximate result of Defendant's action or inactions and the willful and malicious nature of the wrongs committed against the Plaintiff, the Plaintiff has suffered and will continue to suffer past, present and future severe mental anguish and pain and suffering, for which he pleads to recover at trial. The damages for said mental anguish and pain and suffering exceed the minimum jurisdictional requirements of this Court.

## XIV.
## PUNITIVE DAMAGES

64. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes with and incorporated herein with the same force and effect as if set forth verbatim.

65. As a consequence of the foregoing clear and convincing facts and the willful and malicious nature of the wrongs committed against Plaintiff, Plaintiff is entitled to "compensatory" and/or punitive/exemplary damages.

## XV.
## JURY DEMAND

66. Plaintiff demands that this Court empanel a lawful jury to hear this case.

## XVI.
## RESERVATION OF RIGHTS

67. Plaintiff specifically reserves the right to bring additional causes of action against Defendant and to amend this Complaint as necessary.

# XVII.
# PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant, be cited to appear and answer herein and that upon final hearing, Plaintiff have and recover from the Defendant as follows:

a.  Actual damages;

b.  Lost wages including, back pay and front pay;

c.  Compensation for loss of employee benefits;

d.  Additional compensatory damages for damages, including for Plaintiff's mental anguish, pain, and suffering;

e.  All damages recoverable under Chapter 21 of the Texas Labor Code, Title VII, The Americans with Disabilities Act, The Family and Medical Leave Act, 42 USC §1981a, and Chapter 451 of the Texas Labor Code;

f.  Punitive and liquidated damages;

g.  Pre- and post-judgment interest at the highest rates allowed by law;

h.  All reasonable and necessary attorneys' and paralegal fees incurred as specified herein;

i.  All costs of court; and

j.  Such other and further relief, at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

*/s/ Bryan C. Collins*
_____
**BRYAN C. COLLINS**
State Bar No. 04604850
Email: bcollins@clousedunn.com

**ROGGE DUNN**
State Bar No. 06249500

Email: dunn@clousedunn.com

**CLOUSE DUNN LLP**
5200 Renaissance Tower, 1201 Elm Street
Dallas, Texas 75270-2142
Telephone: (214) 220-3888
Facsimile: (214) 220-3833

**ATTORNEYS FOR PLAINTIFF**